UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| BANXCORP, | : | |
| | : | Civil Action No. 10-4769 (SDW)(MCA) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| APAX PARTNERS, L.P., APAX PARTNERS LLP, BEN MERGER SUB, INC., BEN HOLDINGS, INC., APAX US VII, L.P., and APAX PARTNERS EUROPE MANAGERS LIMITED, | : | March 28, 2011 |
| Defendants. | : | |

**WIGENTON**, District Judge.

Before the Court is Defendants Apax Partners LLP ("Partners"), BEN Merger Sub, Inc., ("BEN Merger"), BEN Holdings, Inc., ("BEN Holdings"), Apax US VII, L.P., Apax Partners Europe Managers Limited ("collectively "foreign Defendants"), and Apax Partners, L.P.'s ("Apax") (collectively "Defendants"),[1] Motion to Dismiss Plaintiff, BanxCorp's ("BanxCorp" or "Plaintiff") Complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2)[2] and for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[3] This Court has jurisdiction under 15 U.S.C. §§ 1 and 26, and 28 U.S.C. §§

---

[1] The relationship between the Defendants is as follows: BEN Merger "is a wholly owned subsidiary of BEN Holdings, an indirect wholly owned subsidiary of Ben Holding S.a.r.l., which is beneficially owned by Apax US VII, L.P., Apax Europe VII-A, L.P., Apax Europe VII-B, L.P. and Apax Europe VII-1, L.P.; Apax . . . is [] an advisor to Apax US VII, L.P. and" Partners, "which is an advisor to Apax Partners Europe Managers Limited, the discretionary investment manager to" Apax Europe VII-A, L.P. and Apax Europe VII-B, L.P. (Compl. ¶ 28.)

[2] Plaintiff has conceded to the dismissal, without prejudice, of "its claims against all of the original [D]efendants in this action, except for" Apax. (Pl.'s Br. 1.) Therefore, all of the foreign Defendants have been withdrawn, rendering Defendants' Motion to Dismiss for lack of personal jurisdiction moot. Thus, the Court will not address the arguments asserted by the foreign Defendants. Additionally, because Apax is the only remaining Defendant, this Opinion pertains only to Apax.

[3] Plaintiff also brings a Cross Motion to Consolidate this action and the related action, BanxCorp v. Bankrate, Inc., Civ. No. 07-3398 (SDW)(MCA) ("related action") pursuant to Federal Rule of Civil Procedure 42(a). However, on

1331, 1337, and 1367.  Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c), and 15 U.S.C. §§ 15 and 22.  The Motions are decided without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons stated below, this Court grants Apax's Motion to Dismiss.

### FACTUAL AND PROCEDURAL BACKGROUND

BanxCorp, a Delaware Corporation, is a provider of bank rate tables listing interest rates from financial institutions.  (Compl. ¶ 1.)  Partners is a United Kingdom limited liability partnership.  (Id. at ¶ 2.) Defendant Apax is a Delaware limited liability partnership and an advisor to Partners.  (Id. at ¶¶ 3, 28.)[4]  Plaintiff alleges that Partners, which is not in the business of providing bank rate listings, (Id. ¶ 24), sought "to enter the market more rapidly by acquiring" BANKRATE, Inc.[5] ("Bankrate"), an aggregator and supplier of bank rate listings, on July 22, 2009.  (Id. at ¶¶ 24, 25.)  Bankrate continued as the surviving corporation after the merger and became a wholly owned subsidiary of BEN Holdings.  (Id. at ¶ 30.)

BanxCorp further alleges that Partners offered "Bankrate Insiders . . . certain sweetheart deals and cash payouts, so as to ensure their support in acquiring BANKRATE's monopoly giving [] [Partners] the inherent ability to fix prices in the relevant market throughout the United States by gaining control of BANKRATE's CARTEL."  (Id. at ¶ 32; see also Id. at ¶ 38.) According to Plaintiff, "Defendants knew and agreed to act in concert with BANKRATE and in conjunction with the CARTEL" to fix prices, divide the market, and allocate customers, traffic and revenue.  (Id. at  ¶ 99.)  Specifically, BanxCorp asserts that "Defendants have acquiesced and agreed to let BANKRATE sell Bank Rate Website Hyperlinks on behalf of itself and the

---

January 26, 2011, this Court denied Plaintiff's Cross Motion to Consolidate.  (See Docket Entry No. 32).  Therefore, it will not be addressed in this Opinion.
[4] Although this Opinion only pertains to Apax, the only remaining Defendant, it will make references to Partners, one of the foreign Defendants, because Plaintiff's allegations against Apax are based entirely on Partners' conduct.
[5] Bankrate is a Defendant in the related action.

members of the CARTEL at CPC [(cost per click)] prices they knew to be fixed pursuant to the conspiracy described above . . . ." (Id. at 100.)

Plaintiff filed a four-count Complaint against Defendants alleging: (1) an illegal restraint of trade in violation of § 1 of the Sherman Act, 15 U.S.C. § 1; (2) monopolization and attempted monopolization in violation of § 2 of the Sherman Act; (3) prohibited mergers and acquisitions in violation of § 7 of the Clayton Act, 15 U.S.C. § 15; and (4) contracts and combinations in restraint of trade in violation of § 56:9-3 of the New Jersey Antitrust Act, N.J. Stat. Ann. § 56:9-1 et seq. (West 2001).[6] (Compl. ¶¶ 137-158.)

## STANDARD OF REVIEW

The adequacy of pleadings is governed by Fed. R. Civ. P. 8(a)(2), which requires that a Complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief." See also Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief."). In considering a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Phillips, 515 F.3d at 231 (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)) ("Twombly"). As the Supreme Court has explained:

---

[6] Defendants' Motion barely addresses Plaintiff's New Jersey Antitrust Act claims. Consequently, this Court will not analyze the sufficiency of BanxCorp's pleadings under the New Jersey Antitrust Act.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 556–57, 70) (internal citations omitted). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). Id.

Although the Third Circuit has instructed that antitrust complaints should be liberally construed, "they [are not] exempt from the federal rules." Commonwealth of Pa. ex. rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 179 (3d Cir. 1988) (quoting Sims v. Mack Truck Corp., 488 F. Supp. 592, 608 (E.D. Pa. 1980)). According to the Supreme Court in Twombly, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his[/her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555 (internal citations omitted). Furthermore, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. The Court further stated that an antitrust complaint must plead "enough factual matter (taken as true) to suggest that an agreement was made. Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough facts

4

to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." Id. at 556. The Third Circuit summarized the Twombly pleading standard as follows: "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556).

## DISCUSSION

Apax, the sole remaining Defendant, moves to dismiss BanxCorp's claims for violation of §§ 1 and 2 of the Sherman Act, § 7 of the Clayton Act, and NJ. Stat. Ann § 56:9-3, the New Jersey Antitrust Act. It asserts that Plaintiff has failed to allege any specific facts to support its claims and that Plaintiff lacks standing. On the other hand, Plaintiff argues that the Motion should be denied because it has adequately stated a claim under §§ 1 and 2 of the Sherman Act and § 7 of the Clayton Act.

### A. Illegal Restraint of Trade under § 1 of the Sherman Act

Plaintiff alleges that "Defendants entered into a contract, combination or conspiracy in restraint of trade to achieve monopoly power, fix prices, divide markets and allocate customers, traffic and revenues with competitors in the market for Bank Rate Websites . . . ." (Compl. ¶ 138). Section 1 of the Sherman Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. But "[s]ince virtually all business agreements restrain trade to some extent, § 1 of the Sherman Act has been construed to make illegal only those contracts that constitute unreasonable restraints of trade." Yeager's Fuel v. Pa. Power & Light Co., 953 F. Supp. 617, 653 (E.D. Pa. 1997) (quoting Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996)) (internal quotations omitted). To establish a claim

under § 1, Plaintiff must show that: "(1) the defendants contracted, combined or conspired among each other; (2) the combination or conspiracy produced anti-competitive effects within the relevant product and geographic markets; (3) the objects of the conduct pursuant to that contract or conspiracy were illegal; and (4) the plaintiffs were injured as a proximate result of that conspiracy." Ideal Dairy Farms v. John Labbatt, Ltd., 90 F.3d 737, 748 n.5 (3d Cir. 1996).

Apax maintains that Plaintiff has not pled any facts showing that it engaged in any antitrust activity. This Court agrees. While Twombly does not "require heightened fact pleading of specifics," the plaintiff must come forward with "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 570. Although BanxCorp is not required to assert "detailed factual allegations" in its complaint, id. at 555, it has an obligation to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is insufficient. Id. (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556). Put differently, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (internal citations omitted). Additionally, the Third Circuit has announced that "[o]nly allegations of conspiracy which are particularized . . . will be deemed sufficient." Garshman v. Universal Res. Holding, Inc., 641 F. Supp. 1359, 1370 (D.N.J. 1986), aff'd, 824 F.2d 223 (3d Cir. 1987) (quoting Kalmanovitz v. G. Heileman Brewing Co., 595 F. Supp. 1385, 1401 (D. Del. 1984)) (internal quotations omitted).

Here, the Complaint merely alleges that one of the foreign Defendants, Partners, acquired Bankrate in 2009, and that subsequently "Defendants entered into a contract, combination or conspiracy in restraint of trade." (Compl. ¶¶ 30, 138.) However, there are no facts in the

Complaint specifically pointing to Apax's involvement in the alleged antitrust violation. Plaintiff simply substitutes Apax with the general terms "defendants" and "international cartel" in its Complaint. Plaintiff's use of the "global term[s] defendants [and cartel] to apply to numerous parties without any specific allegations that would tie each particular defendant to the conspiracy is not sufficient" under Twombly and its progeny. In re Elec. Carbon Prods. Antitrust Litig., 333 F. Supp. 2d 303, 312 (D.N.J. 2004) (internal quotations omitted); see also Garshman, 641 F. Supp. at 1370 (an adequate conspiracy allegation is one that is particularized). In order to satisfy the pleading requirement, Plaintiff had to "allege that 'each individual defendant joined the conspiracy and played some role in it' because, 'at the heart of an antitrust conspiracy is an agreement and a conscious decision by each defendant to join it.'" In re Elec. Carbon Prods. Antitrust Litig., 333 F. Supp. 2d at 312 (quoting Jung v. Assoc. of Am. Med. Colls., 300 F. Supp. 2d 119, 163-64 (D.D.C. 2004)).

Additionally, to the extent that Plaintiff is alleging that Apax is liable based on a parent-subsidiary relationship, Plaintiff's argument lacks merit for two reasons. First, the Complaint specifically alleges that Bankrate is presently a wholly owned subsidiary of BEN Holding. (Compl. at ¶ 30.) BanxCorp does not allege that Apax and BEN Holdings are one corporate entity. Therefore, Apax cannot be liable for Bankrate's alleged conduct because it is not the parent company. Second, even if Apax is the parent company, Plaintiff's allegations are insufficient. "[A] parent corporation is not liable for the acts of its subsidiary allegedly in violation of federal antitrust laws simply by virtue of that ownership interest." In re Pressure Sensitive Labelstock Antitrust Litig., 356 F. Supp. 2d 484, 494 (M.D. Pa. 2005) (internal quotations omitted). According to the court in In re Pa. Title Ins. Antitrust Litig., "when a 'parent controls, directs, or encourages the subsidiary's anticompetitive conduct, the parent

engages in sufficient independent conduct to be held directly liable as a single enterprise with the subsidiary under the Sherman Act.'" 648 F. Supp. 2d 663, 689 (E.D. Pa. 2009) (quoting Nobody in Particular Presents, Inc. v. Clear Channel Commc'ns, Inc., 311 F. Supp. 2d 1048, 1070 (D. Colo. 2004)).  This is because "when a parent directs its subsidiary to carry out the parent's anticompetitive designs, the parent essentially uses its subsidiary to violate antitrust laws, which constitutes sufficient independent participation in the conspiracy by the parent for it to incur § 1 liability." In re Pa. Title Ins. Antitrust Litig., 648 F. Supp. 2d at 689.  However, Plaintiff has not alleged that Apax controlled, directed, or encouraged Bankrate's alleged anticompetitive conduct.  In contrast, the Complaint alleges that Bankrate was involved in the alleged anticompetitive conduct prior to the merger.  (Compl. ¶¶ 3, 18.)

Moreover, contrary to Plaintiff's position, the documents disclosed by Bankrate during discovery in the related action, and this Court's decision in that case do not provide a basis for concluding that it has adequately pled a claim as to Apax.  As Apax points out, Plaintiff does not even mention Apax in that complaint.  (Defs.' Br. 10-11.)  The complaint and other documents pertaining to the related action focused on Bankrate and the cartel's[7] alleged antitrust violation.  Also, that complaint did not assert that the alleged anticompetitive conduct occurred after Partners acquired Bankrate or that Apax was involved, in any way, in the alleged antitrust violation.  Consequently, this Court's decision did not make any reference to Apax.  Thus, that decision is inapplicable to this matter and BanxCorp's reliance on it is misplaced.

Similarly, Plaintiff's reliance on United States v. Paramount Pictures, Inc., 334 U.S. 131 (1948) is misplaced.  In Paramount Pictures, Inc., the District Court found that a horizontal and vertical price fixing conspiracy existed between the defendants, who were competitors.  Id. at 142.  In upholding the District Court's decision, the Supreme Court concluded that

---

[7] In the related action, Plaintiff did not name any of the Defendants in this action as a member of the cartel.

"acquiescence in an illegal scheme is as much a violation of the Sherman Act as the creation and promotion of one." Id. at 161. However, that conclusion is inapplicable in this case because Plaintiff has not alleged that Apax, which is an advisor to Partners, is Bankrate's competitor. Neither has Plaintiff pled that Apax is vertically aligned to Bankrate or any member of the cartel or international cartel. Furthermore, Plaintiff is not alleging that it is proceeding on a vertical boycott theory. See Fineman v. Armstrong World Indus., Inc., 980 F.2d 171, 212 (3d Cir. 1992) (holding that although the defendants may not be competitors, "[a] rational factfinder could infer agreement with the objective from knowledge of the objective and action calculated to achieve the objective" based on a vertical boycott theory); see also Spectators' Commc'n Network, Inc. v. Colonial Country Club, 253 F.3d 215, 222 (5th Cir. 2001); MCM Partners, Inc. v. Andrews-Bartlett & Associates, Inc., 62 F.3d 967, 971-75 (7th Cir. 1995). Here, "[b]ecause [P]laintiff[] allege[s] that [] [Defendants] merely acquiesced in . . . [Bankrate's] conduct, the complaint lacks the 'specific [allegations] of coordinated activity,' that shows that [the] parent[] directed, controlled, or encouraged" Bankrate's anticompetitive conduct. In re Pa. Title Ins. Antitrust Litig., 648 F. Supp. 2d at 689 (internal citations omitted).

Nonetheless, Plaintiff, relying on Palmer v. BRG of Ga., Inc., 498 U.S. 46 (1990), maintains that allocation of markets or submarkets is unlawful even if Apax did not previously compete in the market with BanxCorp. However, underlying the Supreme Court's decision in that case was the fact that the defendants were competitors, even if they "agreed not to compete in each other's territory." Id. at 49. In contrast, the Complaint in this case is devoid of any facts alleging that Apax competes or will compete with Bankrate, or the cartel. Consequently, this Court finds that Plaintiff has failed to adequately plead a claim under §1 of the Sherman Act against Apax.

9

### B. Monopolization and Attempted Monopolization under § 2 of the Sherman Act

In Count Two of the Complaint, BanxCorp alleges monopolization and attempted monopolization in violation of § 2 of the Sherman Act. Section 2 of the Sherman Act provides that every"[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States . . . shall be deemed guilty . . . ." 15 U.S.C. § 2. To establish a claim for conspiracy to monopolize under § 2, BanxCorp must allege: "(1) an agreement to monopolize; (2) an overt act in furtherance of the conspiracy; (3) a specific intent to monopolize; and (4) a causal connection between the conspiracy and the injury alleged." Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc., 602 F.3d 237, 253 (3d Cir. 2010). On the other hand, "[t]o state a claim for attempted monopolization, a plaintiff must allege '(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power.'" Schuylkill Energy Res., Inc. v. Pa. Power & Light Co., 113 F.3d 405, 413 (3d Cir. 1997) (quoting Spectrum Sports, Inc. v. McQuillan, 506 U.S. 447, 456 (1993)). According to the Third Circuit, "'[a] dangerous probability of monopoly may exist where the defendant firm possesses a significant market share when it undertakes the challenged anticompetitive conduct.'" Barr Labs., Inc. v. Abbott Labs., 978 F.2d 98, 112 (3d Cir. 1992) (quoting Int'l Distribution Ctrs., Inc. v. Walsh Trucking Co., 812 F.2d 786, 791 (2d Cir. 1987), cert. denied, 482 U.S. 915 (1987)). However, alleging market share alone is insufficient to properly plead monopoly power or attempted monopolization. Crossroads Cogeneration Corp. v. Orange & Rockland Utilities, Inc., 159 F.3d 129, 141 (3d Cir. 1998). A proper pleading "requires something more, which may include 'the strength of competition, probable development of the industry, the barriers to entry, the nature of the anti-

10

competitive conduct, and the elasticity of consumer demand.'" Id. (quoting Barr Labs., 978 F.2d at 112).

Apax alleges that Plaintiff has failed to state a claim under § 2 of the Sherman Act. This Court agrees. As an initial matter, the Court notes that the allegations pertaining to this claim suffer from the same deficiency as the § 1 claim because Plaintiff does not make any specific allegations as to Apax. Furthermore, essential to a claim for monopolization or attempted monopolization is a requirement that the defendant be a participant of the relevant market and have a share in it. Pastore v. Bell Tel. Co., 24 F.3d 508, 513 (3d Cir. 1994); see also Broadcom Corp. v. Qualcomm Inc., 501 F.3d 297, 307 (3d Cir. 2007) ("To support an inference of monopoly power, a plaintiff typically must plead . . . that a firm has a dominant share in a relevant market"); Aquatherm Indus., Inc. v. Fla. Power & Light Co., 145 F.3d 1258, 1261 (11th Cir. 1998), cert. denied, 526 U.S. 1050 (1999) (affirming the District Court's dismissal of the plaintiff's complaint because the plaintiff did not assert that the defendant "ever competed" in the relevant market); Spanish Broad. Sys. of Fla. v. Clear Channel Commc'ns, Inc., 376 F.3d 1065, 1075 (11th Cir. 2004) (dismissing the plaintiff's attempted monopolization claim because the defendant does not participate in the relevant market). However, as stated earlier, BanxCorp does not allege that Apax is a competitor in the relevant market. Plaintiff merely alleges that Apax is an advisor to Partners. This cannot render Apax a participant in the relevant market. As a result, Apax cannot monopolize or attempt to monopolize the market. What is more, even Apax's future entry into the market is insufficient for purposes of imposing liability under § 2 of the Sherman's Act. Pastore, 24 F.3d at 513.

However, BanxCorp argues that it has pled sufficient facts because the Complaint states that one of the foreign Defendants, Partners, "had the power and intent to monopolize the market

for Bank Rate Websites," and "Defendants' acquisition of BANKRATE further perpetuated BANKRATE's monopoly power in the relevant market . . ." (Compl. ¶¶ 17, 18.) This argument lacks merit. The Complaint specifically alleges <u>Partners</u> sought to enter the relevant market by acquiring BANKRATE. (<u>Id.</u> at ¶ 25) (emphasis added). Furthermore, after the acquisition, Bankrate became a wholly owned subsidiary of BEN Holdings. (<u>Id.</u> at ¶ 30.) Therefore, any allegations pertaining to the Defendants' participation in the relevant market can only be attributed to the foreign Defendants, Partners and/or BEN Holdings. Because Plaintiff has failed to allege that Apax is a participant in the relevant market, it has failed to state a claim under § 2 of the Sherman Act against Apax.

### C. Prohibited Mergers and Acquisitions under § 7 of the Clayton Act

BanxCorp alleges prohibited mergers and acquisitions in violation of § 7 of the Clayton Act in Count Three of the Complaint. Apax asserts that Plaintiff's claim should be dismissed because Plaintiff lacks antitrust standing and has failed to state a claim.

#### a. Standing

"Antitrust injury is a necessary . . . condition of antitrust standing," <u>Barton & Pittinos, Inc. v. SmithKline Beecham Corp.</u>, 118 F.3d 178, 182 (3d Cir. 1997), and the Third Circuit has emphasized "that the district court should first address the issue of whether the plaintiff suffered antitrust injury. If antitrust injury is not found, further inquiry is unnecessary." <u>City of Pittsburg v. W. Penn Power Co.</u>, 147 F.3d 256, 265 (3d Cir. 1998). The injury must be "the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." <u>Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.</u>, 429 U.S. 477, 489 (1977). The Third Circuit has articulated a five-part balancing test for antitrust standing:

> (1) the causal connection between the antitrust violation and the harm to the plaintiff and the intent by the defendant to cause that harm, with neither factor alone conferring standing; (2) whether the plaintiff's alleged injury is of the type for which the antitrust laws were intended to provide redress; (3) the directness of the injury, which addresses the concerns that liberal application of standing principles might produce speculative claims; (4) the existence of more direct victims of the alleged antitrust violations; and (5) the potential for duplicative recovery or complex apportionment of damages.

Broadcom Corp., 501 F.3d at 320 (quoting Barton & Pittinos, Inc., 118 F.3d at 181).

Here, Plaintiff has failed to allege how Partners' acquisition of Bankrate lessened competition. In fact, Plaintiff's own allegations support the conclusion that Plaintiff does not have antitrust standing. According to BanxCorp, "Defendants entered into a contract, combination or conspiracy in restraint of trade to achieve monopoly power in the market for Bank Rate Websites . . . by acquiring and operating Bankrate . . . which itself had achieved monopoly and power in the relevant market share in excess of 95%." (Compl. ¶ 3; see also Pl.'s Br. 16) (emphasis added). Therefore, Plaintiff admits that Bankrate acquired a dominant share of the relevant market even before it merged with Partners. Consequently, the subsequent merger and acquisition did not have any effect on Bankrate's market share. Additionally, Plaintiff does not allege that Bankrate's market share increased after its merger with Partners. Thus, BanxCorp's "alleged injury is not 'inextricably intertwined' with [] [the] alleged anticompetitive conduct," Broadcom Corp., 501 F.3d at 321, and it lacks standing to assert a § 7 claim.[8]

## CONCLUSION

For the reasons stated above, Apax's Motion to Dismiss the Complaint is GRANTED.[9]

---

[8] Because this Court finds that Plaintiff does not have standing to bring a § 7 claim, it will not address Apax's other arguments.

[9] Although Apax's Motion has been granted, the Court notes that it was unnecessary for Plaintiff to bring this separate action because BEN Holdings would be indirectly responsible for any liability Bankrate incurs as a result of the alleged anticompetitive conduct because it is Bankrate's parent company.

13

**SO ORDERED.**

<u>s/ Susan D. Wigenton</u><br>
**Susan D. Wigenton, U.S.D.J.**